# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

WILLIAM N. GERHARTZ,

        Plaintiff,

-vs-                                        Case No.   12-CV-731

DAVID RICHERT and BILL TYSON,

        Defendants.

# DECISION AND ORDER

        The plaintiff, William N. Gerhartz, filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 in the United States District Court for the Western District of Wisconsin. He is proceeding *in forma pauperis* on a claim that the defendants violated his rights under the Fourth and Fourteenth Amendments by ordering his blood to be drawn without probable cause or consent. The case was transferred to this district on July 17, 2012. Now before the court is the defendants' motion for summary judgment. For the reasons stated herein, the motion will be granted.

## I. MOTION FOR EXTENSION OF TIME

**A. Summary Judgment Motion**

        The defendants' motion for summary judgment was not timely filed. The deadline for filing dispositive motions was November 19, 2012. (Scheduling Order, Docket 30). However, the defendants filed their summary judgment motion on January 18, 2013,

two months late.  As directed by the court in its Order of February 5, 2013, the defendants' reply brief includes an explanation for their untimely motion for summary judgment and a request that the court accept the motion.

The defendants contend that an enlargement of time is appropriate based on excusable neglect because counsel for defendants' legal assistant erroneously relied on the Western District of Wisconsin's scheduling order, which included a dispositive motion filing deadline for January 18, 2013, instead of relying on the Eastern District deadlines which were effected after venue was transferred to this district.  In addition, the legal assistant failed to advise counsel for the defendants that the longer deadlines were Western District deadlines when calendaring was discussed, and counsel assumed that they were deadlines set by the Eastern District.

The court finds that counsel did not willfully ignore the deadline but instead negligently failed to take responsibility for following the correct deadline.  The delay, though significant, did not prejudice the plaintiff.  Under the circumstances, the court will allow the enlargement of time because counsel has demonstrated excusable neglect based on the calendaring error.  *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); Fed. R. Civ. P. 6(b)(1)(B).

**B. Reply Brief**

The defendants have filed a motion for extension of time to file their reply brief. According to counsel for the defendants, she filed the reply brief one day late due to

2

the unexpected and sudden onset of illness which prompted her to remain homebound and unable to work for several days. (Affidavit of Michele M. Ford, 2/18/13 ¶ 2.) Although counsel states that the reply brief was only one day late, by the court's computation it was four days late. Specifically, the defendants had fourteen days from January 31, 2013, to reply. *See* Fed. R. Civ. P. 6(a)(1); Civil L.R. 56(b)(3) (E.D. Wis.). The tardy reply brief did not prejudice the plaintiff or unduly delay this case and, therefore, under the circumstances, the court will grant the time extension. *See* Fed. R. Civ. P. 6(b)(1)(B). However, the court recommends closer attention to filing deadlines and their computation in the future.

## II. SUMMARY JUDGMENT STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Ames v. Home Depot U.S.A., Inc.*, 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations,

3

stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

### III. FACTS[1]

On February 16, 2006, defendant Deputy David Richert investigated an auto accident involving a number of individuals, including the plaintiff. (Gerhartz Aff. ¶ 2). During the course of the investigation, he spoke to Paramedic Kent J. Katalinick, a first responder at the scene and a paramedic treating the plaintiff. (Richert Aff. ¶¶ 2-3). Paramedic Katalinick advised that he believed the plaintiff had been drinking alcohol. (Richert Aff. ¶ 3).

The plaintiff was transported to Theda Clark Medical Center and Deputy Richert followed. (Richert Aff. ¶ 4). While en route to the hospital, Deputy Richert spoke with defendant Sergeant William Tyson. *Id.* Sergeant Tyson informed Deputy Richert that he had spoken with a bartender at Jeanne's Bar in Sherwood, Wisconsin, and was informed that the plaintiff had been in the bar prior to the accident and had four or five beers, and had

---

[1]This section is taken from the Defendants' Proposed Findings of Fact.

4

also stated that he had smoked "way too much pot." *Id.*

Upon arrival at Theda Clark Medical Center, Deputy Nicholas Sablich stated to Deputy Richert that Paramedic Katalinick again said that he had detected the odor of intoxicants on the plaintiff. (Richert Aff. ¶ 5). Based upon statements from Sergeant Tyson and Paramedic Katalinick, Deputy Richert requested an evidentiary blood draw on the plaintiff pursuant to the Wisconsin Implied Consent law. (Richert Aff. ¶ 6.) On March 6, 2006, the Calumet County Sheriff's Department received the blood test result on the plaintiff from the Wisconsin Lab of Hygiene; the result was .243 g/100mL. (Richert Aff. ¶ 7.)

As a result of the accident, the plaintiff entered a no contest plea to one count of injury by intoxicated use of a motor vehicle in violation of Wis. Stat. § 940.25(1)(a)(2007-2008) and one count of operating while under the influence, fifth or subsequent offense, in violation of Wis. Stat. § 346.63(1)(a). (1/18/13 Ford Aff., Ex. C). The court entered judgments of conviction for these offenses on June 21, 2006. The court then sentenced the plaintiff to twelve years imprisonment on the injury by intoxicated use of a motor vehicle conviction, with seven years initial confinement and five years of extended supervision, and six years imprisonment on the operating while intoxicated conviction, with three years of initial confinement and three years of extended supervision, to be served consecutively.

The plaintiff filed a motion for post-conviction relief alleging he received ineffective assistance of trial counsel. (1/18/13 Ford Aff., Ex. F at 1). He asserted that his

5

trial counsel was ineffective because he failed to investigate the scene of the collision that led to the charge of injury by intoxicated use of a motor vehicle and did not hire an accident reconstructionist. The plaintiff argued that such an investigation would have shown that the other driver, and not he, was responsible for the collision. The circuit court held a hearing and denied his motion.

On direct appeal, the plaintiff again alleged that he received ineffective assistance of trial counsel on the grounds that counsel failed to investigate the circumstances of the accident and failed to hire an accident reconstruction expert. (1/18/13 Ford Aff., Ex. F). He also claimed that his counsel was ineffective for failing to move for suppression of blood test results showing that the plaintiff's blood alcohol level was .243 following the accident. The Wisconsin Court of Appeals summarized the events leading to the plaintiff's imprisonment as follows:

> Gerhartz pled guilty to two counts of disorderly conduct in case No. 2008AP2420-CR. He also entered a diversion agreement under which the charges would be dismissed if he met certain conditions. The agreement was revoked when Gerhartz was charged in case No. 2008AP2421-CR. Gerhartz was charged in the case with, among other things, injury by intoxicated use of a motor vehicle after the truck he was driving collided with a car driven by Brandon Bratz. Gerhartz's blood alcohol concentration was .243 at the time, and Bratz and a passenger in his car were both injured in the crash. In case No. 2008AP2422-CR, Gerhartz was charged with operating while intoxicated as a fifth and subsequent offense and two counts of disorderly conduct. The remaining charges were dismissed.

*State v. Gerhartz*, 2009 WI App 158, ¶2, 321 Wis.2d 749, 776 N.W.2d 100 (unpublished)

(1/18/13 Ford Aff., Ex. F ). The court of appeals concluded that trial counsel was not ineffective on both grounds. On the first issue, the court agreed with the circuit court's determination that counsel negotiated a reasonable deal in light of the evidence against the plaintiff and the number of charges pending against him. As to the second issue, the court determined that counsel's decision not to move for suppression was reasonable because the responding officer had sufficient probable cause to collect a blood sample under Wisconsin's implied consent statute, Wis. Stat. § 343.305(2). As to probable cause, the court stated:

> [A] paramedic who was treating Gerhartz at the scene of the collision told the officer that he believed Gerhartz had been drinking alcohol, and another first responder was a bartender who said she had served Gerhartz alcohol that evening. Because the officer had probable cause to believe that Gerhartz had been driving after consuming alcohol, a motion to suppress the results of the blood test would have been denied.

*Gerhartz*, 2009 WI App. ¶ 7. (1/18/13 Ford Aff., Ex. F at 3).

The plaintiff filed a petition for a writ of habeas corpus with the Eastern District of Wisconsin pursuant to 28 U.S.C. § 2254. (1/18/13 Ford Aff., Ex. D). His claim for habeas relief was based on the same grounds as presented to the Wisconsin Court of Appeals: ineffective assistance of counsel by virtue of, among other things, the failure of his attorney to move to suppress the compelled blood test results for lack of probable cause. United States Magistrate Judge William E. Callahan stated that because the plaintiff raised this issue for the first time on direct appeal of the trial court's denial of his motion for post-conviction relief, the Wisconsin Court of Appeals was not required to address his

7

argument on the issue. (1/18/13 Ford Aff., Ex. D at 9). Magistrate Judge Callahan went on to state that, nonetheless, the appeals court considered and addressed it, and that the court appeals concluded:

> . . . that trial counsel was not ineffective for failing to move to suppress the results of the blood test. Under Wisconsin's Implied Consent law, a person who drives a motor vehicle on a public highway in Wisconsin is deemed to have consented to a blood draw at the request of a law enforcement officer. *See* Wis. Stat. § 343.305(2)(2007-2008). The officer may obtain a blood sample, even if the person is unconscious, if the officer has probable cause to believe that the person has violated Wis. Stat. 346.63(1), (2m) or (5), or Wis. Stat. § 940.25. *See* Wis. Stat. §343.305(3)(b). In this case, a paramedic who was treating Gerhartz at the scene of the collision told the officer that he believed Gerhartz had been drinking alcohol, and another first responder was a bartender who said she had served Gerhartz alcohol that evening. Because the officer had probable cause to believe Gerhartz had been drinking after consuming alcohol, a motion to suppress the results of the blood test would have been denied. Trial counsel, therefore, was not ineffective for failing to make such a motion.
>
> *Gerhartz*, 2009 WI App. ¶ 8.

(1/18/13 Ford Aff., Ex. D at 9-10).

In finding probable cause, Magistrate Judge Callahan determined that the Wisconsin appellate court relied on two pieces of evidence. First, the paramedic who treated the plaintiff at the scene of the accident told police that he believed the plaintiff had been drinking. Second, another first responder, who was also a bartender, told police that she served the plaintiff beer earlier that evening. In addition to this evidence, Magistrate Judge Callahan stated that the record revealed that the plaintiff told paramedics "I fucked up" while

8

traveling in the ambulance from the accident scene to the hospital, where the blood sample was drawn. (1/18/13 Ford Aff., Ex. D at 10). Magistrate Judge Callahan stated: "This evidence was more than sufficient to establish probable cause, meaning that a motion to suppress would have been denied." *Id.*

## IV. ANALYSIS

The defendants contend that, (1) the Fourteenth Amendment claim should be dismissed; (2) the *Heck* doctrine bars this action; (3) issue preclusion bars this action; and (4) the blood draw was legal. The plaintiff contends that the defendants' motion should be dismissed "for fraud, conspiracy, perjury and all misconduct from Attorney Ford and her involvement with these Calumet County Police Officers, Sgt. Bill Tyson and Deputy David Richert and any others who may be in conspiracy with them." (Pl.'s Resp. Br. at 1.) He also contends that his claim is not *Heck*-barred.

As an initial matter, the plaintiff's claim is under the Fourth Amendment because it is based on the blood draw. There is no apparent claim under the Fourteenth Amendment and, therefore, any such claim will be dismissed. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005) (dismissing equal protection and Eighth Amendment claims based on same circumstances as free exercise claim because free exercise claim "gains nothing by attracting additional constitutional labels"). The court analyzes the plaintiff's allegations under the most "explicit source[s] of constitutional protection," *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Conyers*, 416 F.3d at 586, and in this case, the salient claim is under the

9

Fourth Amendment.

The court now turns to the plaintiff's Fourth Amendment claim. The defendants contend that the claim is barred by *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), which holds that a claim for damages may not be pursued if its success would necessarily imply the invalidity of the criminal conviction or sentence.

*Heck* does not preclude or delay the accrual of Fourth Amendment claims even if conviction has resulted. *Wallace v. Kato*, 549 U.S. 384, 394 (2007); *see Nelson v. Campbell*, 541 U.S. 637, 647 (2004) ("[W]e were careful in Heck to stress the importance of the term 'necessarily.' For instance, we acknowledged that an inmate could bring a challenge to the lawfulness of a search pursuant to § 1983 in the first instance, even if the search revealed evidence used to convict the inmate at trial, because success on the merits would not 'necessarily imply that the plaintiff's conviction was unlawful.'" (quoting *Heck*, 512 U.S. at 487 n.7)); *Dominguez v. Hendley*, 545 F.3d 585, 589 (7th Cir. 2008) ("Even if no conviction could have been obtained in the absence of the violation, the Supreme Court has held that, unlike fair trial claims, Fourth Amendment claims as a group do not necessarily imply the invalidity of a criminal conviction, and so such claims are not suspended under the *Heck* bar to suit."); *Gilbert v. Cook*, 512 F.3d 899, 901 (7th Cir. 2008) ("*Wallace v. Kato* . . . holds that *Heck* does not affect litigation about police conduct in the investigation of a crime."). The Court of Appeals for the Seventh Circuit has stated repeatedly that most Fourth Amendment claims can go forward despite the rule of *Heck*. *See Reynolds v.*

10

*Jamison*, 488 F.3d 756, 767 (7th Cir. 2007) (recognizing "bright-line rule" allowing false-arrest claims to survive *Heck*); *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006) (holding that claims for excessive force are not barred by *Heck*); *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 862 (7th Cir. 2004) ("Thus, plaintiff's contention that his Fourth Amendment claim does not imply the invalidity of his conviction, a contention that defendants have not challenged, is sufficient to remove that claim from *Heck's* bar."); *Copus v. City of Edgerton*, 151 F.3d 646, 648 (7th Cir. 1998) ("Fourth Amendment claims for unlawful searches or arrests do not necessarily imply a conviction is invalid, so in all cases these claims can go forward."); *Gonzalez v. Entress*, 133 F.3d 551, 553 (7th Cir. 1998) (holding that a claim based on unlawful search or seizure is not barred by *Heck*); *Booker v. Ward*, 94 F.3d 1052, 1056 (7th Cir. 1996) (holding that wrongful arrest claim avoids *Heck* bar because "one can have a successful wrongful arrest claim and still have a perfectly valid conviction"); *Simpson v. Rowan*, 73 F.3d 134, 136 (7th Cir. 1995) ("Because an illegal search or arrest may be followed by a valid conviction, a conviction generally need not be set aside in order for a plaintiff to pursue a § 1983 claim under the Fourth Amendment.").

Here, the plaintiff claims that the defendants ordered his blood drawn without probable cause. The plaintiff subsequently pled no contest to injury by intoxicated use of a motor vehicle and operating while under the influence, fifth or subsequent offense. The evidence from the plaintiff's criminal case establishes that the paramedic who treated him at the scene of the accident told police that he believed the plaintiff had been drinking and

11

a first responder told police that she served the plaintiff beer earlier that evening.[2] In light of these factors, success on the merits of the plaintiff's Fourth Amendment claim would not necessarily imply the invalidity of his conviction. Therefore, the plaintiff's Fourth Amendment claim is not *Heck*-barred.

Next, the defendants contend that the plaintiff's claim is subject to dismissal based on issue preclusion, also known as collateral estoppel. The plaintiff did not respond to this argument.

In *Allen v. McCurry*, 449 U.S. 90, 104-05 (1980), the Supreme Court held that collateral estoppel can be invoked against a § 1983 claimant to bar relitigation of his Fourth Amendment search and seizure claim decided against him in a state criminal suppression hearing. *Guenther v. Holmgreen*, 738 F.2d 879, 883 (7th Cir. 1984). Thereafter, the Court indicated that federal courts should apply the state's collateral estoppel law in determining whether a § 1983 claim is precluded by a prior state judicial proceeding. *Id.* at 884 (citing *Haring v. Prosise*, 462 U.S. 306, 313 (1983)). A state court judgment will not be given collateral estoppel effect, though, where "the party against whom an earlier court decision is asserted did not have a full and fair opportunity to litigate the claim or issue decided by the first court." *Allen*, 449 U.S. at 96. The Supreme Court has indicated that to satisfy the "full and fair opportunity to litigate" requirement, the prior state proceedings "need do no more

---

[2] The plaintiff contends that this evidence is the result of a criminal conspiracy to draw his blood. However, as set forth in the court's February 5, 2013, order denying the plaintiff's motion for a hearing on the alleged criminal conspiracy, he was not permitted to proceed on a separate claim that the defendants conspired against him nor does this court have the authority to initiate criminal prosecutions.

12

than satisfy the minimum procedural requirements of the Fourteenth Amendment's Due Process Clause." *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 481 (1982).

Under the doctrine of collateral estoppel, when an issue is actually and necessarily decided by a court of competent jurisdiction, that decision is conclusive in all subsequent litigation involving a party to the prior litigation. *See Adair v. Sherman*, 230 F.3d 890, 893 (7th Cir. 2000). To determine whether a state judgment should preclude a subsequent federal action, federal courts must give the judgment the same preclusive effect as that state would give it. *Allen*, 449 U.S. at 96; *Wilhelm v. County of Milwaukee*, 325 F.3d 843, 846 (7th Cir. 2003). In Wisconsin, an issue may not be relitigated if: (1) the same issue was involved in a prior action; (2) the issue was actually litigated; (3) the determination of the issue was essential to the prior judgment; and (4) the party against whom estoppel is invoked was represented in the prior action. *Adair*, 230 F.3d at 893.

On direct appeal, the plaintiff litigated his claim that trial counsel was ineffective for, among other things, failing to move for suppression of blood test results for lack of probable cause. *State v. Gerhartz*, 2009 WI App 158, 321 Wis. 2d 749, 776 N.W.2d 100. The court of appeals determined that there was probable cause to draw the plaintiff's blood because a paramedic who was treating the plaintiff at the scene of the collision told the officer that he believed the plaintiff had been drinking alcohol, and another first responder was a bartender who said she had served him alcohol that evening. The appeals court, therefore, determined that trial counsel was not ineffective for failing to move to suppress

13

the results of the blood test. Likewise, in a petition for a writ of habeas corpus filed in this district in 2010, the plaintiff challenged his 2006 judgment of conviction on the ground that trial counsel was ineffective based on failure to move for suppression of the result of the blood test. *Gerhartz v. Wallace*, Case No. 10-cv-188-WEC (E.D. Wis. June 22, 2011). However, the district court stated that the evidence was more than sufficient to establish probable cause and that the appellate court's ruling was a reasonable application of the law. The federal court also declined to address the plaintiff's Fourth Amendment challenge to the sufficiency of evidence that the state appellate court cited in support of its finding of probable cause, citing *Stone v Powell*, 428 U.S. 465, 494 (1976) ("Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial.").

The defendants contend that the plaintiff "actually litigated" his challenge to the compelled blood search in the context of claiming that his lawyer was ineffective. However, it is not clear that this issue was "actually litigated." *See City of Sheboygan v. Nytsch*, 722 N.W.2d 626, 630-31 (Wis. Ct. App. 2006). The plaintiff did seek to suppress the results of the blood test in his motion for post-conviction relief. Moreover, on direct appeal, the court of appeals decided that there was probable cause although it was not required to do so. The defendants have established that issue preclusion bars the plaintiff's claim.

14

The defendants also contend that the blood draw was legal. The decision of a government official to draw blood to determine an individual's blood alcohol content amounts to a search for Fourth Amendment purposes. *Schmerber v. California*, 384 U.S. 757, 767 (1966). However, blood may be drawn without a warrant if it is incident to a lawful arrest and if, 1) the arresting officers have a "clear indication" that the evidence they seek will be found in the arrestee's blood; 2) exigent circumstances exist; and 3) the method used to take the blood sample is "a reasonable one" and "performed in a reasonable manner." *Id.* at 770-71.

The facts establish that a paramedic detected the odor of alcohol on the plaintiff at the scene of the accident and that a first responder, who was also a bartender, stated that she had served the plaintiff alcohol earlier in the evening. Thus, the defendants had a clear indication that an unlawful alcohol level would be found in the plaintiff's blood. There is no indication that the method used to take the blood sample was unreasonable. Finally, given the nature of the dissipation of alcohol from a person's bloodstream, exigent circumstances existed. *Id.* at 770.

Based on the foregoing, a reasonable factfinder could not conclude that the defendants violated the plaintiff's rights under the Fourth Amendment when they ordered the blood draw. Therefore, the defendants' motion for summary judgment will be granted.

**IT IS THEREFORE ORDERED** that the defendants' motion for summary judgment (Docket 38) is **granted**.

**IT IS FURTHER ORDERED** that the defendant's motion to enlarge time (Docket 52) is **granted**.

**IT IS FURTHER ORDERED** that the Clerk of Court enter judgment dismissing the plaintiff's claims and this action.

Dated at Milwaukee, Wisconsin, this 20th day of August, 2013.

**SO ORDERED,**

**HON. RUDOLPH T. RANDA**
**U. S. District Judge**